Blair, J.
This case was submitted to the court upon the sole question as to whether or not the Dow tax may be lawfully imposed upon the business of trafficking in intoxicating liquors in a county in which the sale of intoxicating liquors as a beverage has been prohibited under what is known as the Rose county local option law.
The plaintiff claims that it can not, and as a basis for his contention cites the case of Haas v. Remick, 13 C.C.(N.S.), 1, reported in the Ohio Law Reporter of April 18, 1910.
We have carefully considered the opinion of the learned judges who decided this case, and with all due respect to their legal lore and acumen we find ourselves wholly unable to agree with their conclusion as announced in the first syllabus of the case, which is:
‘ ‘ The Dow tax law is not valid and operative in a county which has been voted dry under the Rose local option law. ’ ’
The opinion of the learned judges who decided this case seems to rest upon two propositions:
*178 First. That there is some right to engage in the liquor business which is recognized by the laws of this state. For instance, on page 2, they say:
“The right to traffic in intoxicating liquors is a common law right, possessed by the people, a property right * * * and recognized as such in this state. ’ ’
A little further on they say:
“The state, in the Dow tax law, recognized those rights and heavily taxed the persons engaged in the exercise of those rights.” " '•
And'again they say:
“The statute expressly declares the tax is imposed upon the business of trafficking in spirituous, vinous, malt or other, intoxicating liquors, and hence it expressly recognizes the right to carry on such business' and is a'permit to do it.”
And again they say:
“It is apparent, therefore, that the statute recognizes the right of and permits and makes it lawful. ’ ’
Second. They hold that the Dow assessment tax and the Eose county local option' law aré conflicting, and that the Eose county local option law, being the later enactment, repeals the Dow assessment tax law in so' far as they are conflicting, and that by reason thereof the tax' can mot be collected in territory in which the Eose' county local option law is operative. "We do not so read the decisions’ o’f the Supreme Court of the state. On page 559, 44th Ohio State, Adler v. Whitebeck, Judge Minshall, in his opinion, says:
“A simple tax upon the traffic does no violence to the principle upon which the clause inhibiting a license was inserted in the Cohstitution. This inhibition certainly arose from a sentiment in the .minds of the people that the traffic ivas wrong and should not be encouraged, not from the persuasion that it was right and of such utility that it would be impolitic to impede it by any restriction upon the liberty of pursuing it. By the imposition of a tax. there is no sanction given to the propriety or utility of the business taxed. * , * * The Legislature finds a business productive of evils to the state and society, in which many persons *179 are engaged, and imposes a tax upon it. In doing so it neither directly approves nor disapproves the business itself. It may, however, imply a great deal. The imposition of a tax upon the owner of a dog implies, if it implies anything beyond the purposes to protect the husbandry of sheep a disapproval of the business of keeping of a dog. It is not intended to dignify the business. The same is true of a tax imposed upon the liquor traffic. ’ ’
Instead of the liquor traffic being recognized as a common law right by the Supreme Court we think, in the ease -just quoted, that it is recognized as an evil. We quote from page 567:
‘1 If the liquor traffic is a source of evils, and from the language of Section 9, -Article XV (scheduled Section 18), it was certainly regarded as such by the framers of the Constitution, then the more the traffic prospers the greater the evils resulting from it will be and the more it is repressed, the less they will be. ’ ’
And again, page 568, the learned judge, upon this same line says further:
“The traffic being the acknowledged source of much of the crime and pauperism of the state the appropriation of the funds arising from the tax is in accord with the spirit of the law, part being distributed to the general fund from which the costs of the state created in the prosecution of crime are paid, and part to the police, and part to the'poor fund.”
And again, on page 677, of the case of Senior v. Batterman, 44th Ohio State, it is said:
“The law does not purport to be for revenue but to provide against evils, and to construe it as a revenue law it must be shown that there are no evils incident to the wholesale -traffic, and in contemplation of law, -that none can arise, -a proposition which, we think, can not be maintained. ’ ’
In other words, the tax is imposed not because of any eommon law right, property right, or other right, or privilege that exists either in the citizen or the state to carry on the liquor business, but because the Legislature found that the traffic existed, and that its existence was productive of evil to the state and its people, and in order to suppress this evil and render it less obnoxious the Legislature, in its wisdom, imposed the tax. And the tax is not *180 imposed as a protection to the liquor interest but to mitigate its pernicious effect upon society and is a step in the direction of prohibition.
In the construction of any statute it is well to keep in mind the legislative intent in the enactment of such statute, and in order to ascertain the legislative intent of these two statutes it may be well to take some notice of the history of legislation pertaining to the liquor traffic in this state. Our people, in the adoption of the present Constitution in 1851 approved the fact recognized by the framers of that document that the traffic in intoxicating liquors was productive of evil by inserting as a part of Article XVIII in the schedule the following clause:
“And no license to traffic in intoxicating liquors shall hereafter be granted in this state; but the General Assembly may, by law, provide against the evils resulting therefrom
The evils resulting from such traffic were not only then patent but were of such moment as to call for legislative action by the Legislature of our state by an act passed May 1st, 1854, 52 Ohio Laws, page 153, entiled “An act to provide against the evils resulting from the sale of intoxicating liquors in the state of Ohio, ’ ’ and thereafter additional laws were enacted under the same title by the various General Assemblies until we come to the General Assembly of 1891, and from that date up to the last Legislature there was not a single regular session of the Legislature that did not result in the passage of some one or more enactments curtailing the liquor traffic as to the persons to whom it may be sold, as to -the times when it may be sold, as to the places where it may be sold, as to the quantities in which it may be sold, and as to the manner of the sale itself. The culmination of these enactments being the act,,commonly known as the Dean character bill, passed March 12, 1909, Ohio Laws, page 89, the first section of which was, as a matter of common knowledge, drafted by the liquor trade itself, under the title “to further provide against the evils resulting from the traffic in intoxicating liquors” which evils were so common and had become so patent to all that they had impressed the controlling interest of the trade.to recognize the fact that a large number of those employed in the retail business *181 were aliens, or unnaturalized residents of the United States, having no interest in the perpetuity of our institutions, hence they sought to prohibit these persons from engaging in the business; that a large number of those engaged in the retail trade were felonious criminals, hence the debarring of persons convicted of felonies from engaging in the trade; that a large number of places where the business was carried on was known as gambling resorts, hence the forbidding of gambling to be permitted upon or in connection with the places where the business was carried on; that a large number of these places violated the laws of the state in selling to minors, persons intoxicated, and in the habit of getting intoxicated, hence the making it unlawful for the carrying on of a place where these laws were violated, and still there were a large number of these places the resort of improper females, hence the' forbidding of these places to be conducted.
We also call attention to the fact of the judicial recognition of the growing evils of the trade by the highest court in the state, in the language of Judge Minshall, in Adler v. Whitebeck, supra, on page 558, where he says:
“Laws enacted for the regulation of the traffic have not been enforced, have become, in a measure, obsolete, and the traffic and its abuses ha/ve grown to such proportions as to justly alarm all who reflect upon the interest of the, state and society.”
And this same principle was further recognized by our Supreme Court in the case of Conwell v. Sears, 65th O. S., 49. On page 53, Judge Shauck, in the opinion of the court, says:
“For nearly half a century prior to the enactment of the present statute (referring to the .Dow law) a statute had forbidden throughout the state the sale of intoxicating liquors to be drank upon the premises where sold. During this time the forbidden traffic grew much beyond the general growth of the state. It was therefore most obvious when the present statute was en- . acted that to make the traffic unlawful does not necessarily prevent it. ”
So that in construing these enactments we must take into consideration that the framers of our Constitution and the people who adopted that instrument, the Legislature for more than half *182 a century, and the highest judicial tribunal in our state, have recognized the traffic in intoxicating liquors as a source productive of much evil to the state, and that the controlling interest of the liquor trade itself has recognized the fact that the places in which the traffic is carried on are so in the hands of aliens, felonious criminals, gamblers, habitual violators of all laws regulating the traffic and the harboring of prostitutes that it was compelled as a matter of self-defense to implore our legislative body for laws protecting it from its admitted evil associations.
Among these legislative enactments is the Dow assessment tax and the Bose county local option law, and it will be noticed that the title of each of these particular enactments is as follows, “further to provide against the evils resulting in the traffic in intoxicating liquors,” so that the legislative purpose in the enactment, as expressed in the title of each of these bills, is to provide against the evils resulting from the traffic. These enactments are upon the same subject-matter and must be construed together. But we are not without judicial precedence in their construction. In the ease of State v. Bouch, 47th Ohio State, 478, the court had this very question before it, the question being raised under the township local option law instead of the county local option law, and the court announces the following syllabus in said cause:
‘ ‘ The act of March 3, 1888, entitled ‘ an act to further provide against the evils resulting from the traffic in intoxicating liquors, by local option in any township of the state of Ohio’ (85 Ohio Laws, 55), and the act of May 14, 1886, entitled ‘an act providr ing against the evils resulting from the traffic in intoxicating liquors’ (83 Ohio Laws, 157), relate to the same general subject, and, where necessary to a clear understanding of either, are to be construed together. So construed, a mode is provided in section three of the last named act, for the return to a dealer who has paid the tax and has discontinued business by reason of the traffic having been prohibited in the township, under the act of March 3, 1888, of the ratable proportion of the tax paid to which he is entitled under section four of that act. Hence said section four is not incapable of execution.”
.Notice what Spear, J., in giving the opinion of the court says, on page 485:
*183 ‘ ‘ In giving construction to a statute all its provisions must be considered together. We must endeavor to get at the legislative intent by a consideration of all that has been said in the law, and not content ourselves with partial views, by selecting isolated passages, and holding them alone up to criticism. What is the whole scheme of the law? What object did the Legislature intend to accomplish? Clearly U is to provide against the evils resulting from the sale of intoxicating liquors by taxing the traffic, and, in a measure, prohibiting it.”
Again, on page 487, the court says:
“The same meaning applies to section four of the township local option act. The provision is similar, as to a return of a ratable portion of the tax paid, to that of section eleven of the Dow law. The two acts are in pari materia. Their titles and their subject-matter show that they relate to the same subject. One spirit and policy pervade both statutes, and the two were intended to be consistent and harmonious. The refunder provided for, is intended to be carried out by one and the same officer, and in one and the same way. ’ ’
Again, on page 490:
“The contention that the right of the municipal corporation to pass a prohibitory ordinance depends upon the first making provision for refunding to dealers who discontinue, is wholly untenable. If the law were a license law, and not a tax law, there might be force in the proposition. The tenor of the language of the law itself forbids the implication that provision for a refunder is a condition precedent. The first thing to be done is the passage of the ordinance. No step looking to a refund of tax can possibly precede that. Next, the dealer must stop the business. Not until he has done that, and has satisfied the auditor that the business has been actually discontinued, is he entitled to a refunding order, and then its payment may not be immediate. Nor is this unreasonable.”
But the same question was again before our Supreme Court for judicial determination in the ease of Conwell v. Sears,- 65th Ohio State, 49. Judge Shauck, in delivering the opinion of the court in the ease, says:
‘ ‘ The reliance of counsel for the plaintiff in error is based upon this provision, which is: ‘If any municipal corporation shall prohibit * * * places where intoxicating liquors are sold with *184 in the limits of such corporation, a ratable portion of the tax paid by the proprietors thereof for the unexpired portion of the year shall be returned to such proprietors.’
‘ ‘ The question presented has not been determined by the lexicographers. Although these municipalities have by ordinance forbidden the traffic, they have not prevented it. But the historical development of our legislative policy upon the subject and the terms employed in the present statute indicate the sense in which the word ‘prohibit’ is used in this section.”
And on page 54 he says:
“Full effect will be given to all the provisions of the statute if the word ‘prohibit’ in the provision relied upon by counsel for plaintiffs in error is regarded as having its appropriate meaning of preventing. The object of the particular provision was to provide for an equitable remission of a portion of the assessment, if the municipal authorities should exercise the power of passing an ordinance forbidding the places and also the power of enforcing the ordinance.”
It will be noticed that the language of the section construed by Judge Shauck in Conwell v. Sears, provided that “if any municipal corporation shall prohibit * # * places where intoxicating liquors are sold within the limits of such corporation, a ratable portion of the tax paid by the proprietors thereof for the unexpired portion of the year shall be returned to such proprietors.” And Judge Shauck construed the word “prohibit” to mean not only the enactment of the ordinance but to include its being made effectual by énforeement, while the Legislature in the Bose county local option law in section four provides:
“When any person, company or corporation has discontinued such traffic in accordance with the privisions of this act * * * the county auditor, upon being satisfied of such fact, shall issue to such person, company or corporation a refunding order for an amount proportionate with .the unexpired term for which such assessment has been paid. ”
So that the Legislature in the county local option enactment unequivocably provided that before there could be a refunder of the tax the person must not only discontinue the business but must satisfy the county auditor of such discontinuance. The *185 same is true of the township local option law, Section 4364-27, Revised Statutes of Ohio, and in the municipal local option law, Section 4364-20d, Revised Statutes of Ohio, and in the residence district local option law, Section 4364-300, Revised Statutes of Ohio. The Legislature since the passage of these enactments has twice had the opportunity, and availed itself thereof, to express itself in language not to be misunderstood, forever putting to rest the legislative intent in these enactments.
In the enactment of March 12,1909 (Vol. 100, Ohio Laws, page 89), the Legislature, in passing the act commonly known as the Dean character bill, the provisions of which were drafted by the liquor intérests themselves in the amending of section five of Dow assessment law, provides that every assessor shall return to the county auditor, with his other returns, a statement upon a ■ blank to be furnished by such auditor for that purpose as to every place within his jurisdiction where such business is conducted, etc., using the unequivocable expression that every assessor shall return, etc., not the assessors in those counties in which the sale of intoxicating liquors as a beverage is not prohibited but in every county. It can not be said that the Legislature did not have the fact in their minds at the time that there were counties in which the sale of intoxicating liquors as a beverage was prohibited, for in section three of the act they make the following provision:
“Any prosecuting attorney in any county in which the sale of intoxicating liquors as a beverage is prohibited may appoint a secret service officer, or officer to aid in discovering evidence to be used at the trial of eases for violation of local option laws prohibiting the sale of intoxicating liquors. ’ ’
How can it be said that the Legislature did not intend that the business, if carried on in dry counties should not be taxed, when in the first instance it used the word “every assessor shall return every place” when referring to the Dow tax and limiting the right to prosecutors to appoint secret service officers only to those counties in which the sale of intoxicating liquors as a beverage was prohibited. We think this forever sets at rest the legislative intent as to these enactments, but in the codifying of the liquor laws the Legislature again had the matter up, and we desire to *186 call attention to Section 6074 of the General Code, which is as follows:
“When a person * * * engaged in such business has been assessed and has paid the full amount of such assessment, and afterwards discontinues such business, the county auditor upon being satisfied thereof shall issue to such.person * * * a refunding order for a proportionate amount of such assessment so paid but the amount of such assessment so retained shall not be less than two hundred dollars unless such (discontinuance of business has been caused by an election under a local option law * * * in which case a proportionate amount of such tax shall be refunded in full. ’ ’
Now it is clear under the language of this section that an election under any of the local option laws in which the traffic in intoxicating liquors is made unlawful does not' entitle the person who has paid the tax in full to refund it under this section. There are two other conditions: he must quit the business; and secondly, he must satisfy the county auditor thereof. In other words, he is liable for the tax notwithstanding local option laws prohibit his engaging in the business until he has discontinued the business, as a matter of fact, and has satisfied the county auditor thereof.
The learned court in the case of Haas v. Remick, supra, in commenting upon the case of Conwell v. Sears, supra, says:
“A municipality is but a creature of the state, and not a component part of it, like a county, and municipal ordinances do not prohibit the state from passing and enforcing laws in such municipality in regard to the same matters.”
All of which is true. But the court, in the case of Conwell v. Sears, supra, did not decide that ease upon this principle, as shown by the opinion rendered by the court in the case, but it decided it upon the principle, as Judge Shauck says that prohibit, in the provision of the statute relied upon in that case by the liquor dealer, shall be regarded as having its appropriate meaning of “preventing” and lest he might be misunderstood as meaning “preventing” legally, he went further and showed that he meant ‘ ‘ preventing in fact ’ ’ by saying:
*187 “The object of .the particular provision was to provide for an equitable apportionment of the assessment, if the municipal authority should exercise the power of passing an ordinance for-forbidding a place, and also the power of enforcing the ordinance.”
In other words, he held that the word “prohibit” meant more than to forbid by statute; that in addition to forbidding it meant the actual enforcement of the statute rendering the forbidding efficacious.
This question has been directly before the Supreme Court of this state in the ease of Pioneer Trust Company v. Stritch, 71 O. S., 459. The Supreme Court found the facts as follows (p. 460) : * * # “that at the time of the execution of. the mortgage the premises were not within or near .any village or city and had never been used for the sale of liquor, that September 30, 1900, an election was held in the township where the land is located, by which the business of trafficking in intoxicating liquors thorem was made unlawful, which regulation still continues; that the tax was entered on the duplicate by the auditor upon information that liquor had been clandestinely sold upon the premises by the then owner, the assessments being for all the periods beginning June 21, 1900, up to and including May 20, 1903, which was found to amount to $718.43, that the defendant had no knowledge of any sale of liquor on the premises at any time, nor were the premises adapted to such sale, nor was there anything at the time the mortgage was given about the premises from which any one could have, or should have taken notice of any probability of any liquor being sold there; that this mortgage was dated May 8, 1900, and entered of record May 17, 1900, that the Dow tax assessment was entered on the duplicate June 21, 1903.”
Here is a case where the fact that it is dry territory under a state law is admitted, yet the Supreme Court holds that not only the owner of the premises, who did the selling, but that the mortgage lien of an innocent mortgagee was junior to the assessment of the Dow tax. In other words, that the Dow tax was a first lien against the mortgagee for the amount of his mortgage.
The decision of Haas v. Remick, supra, seems to rest upon the proposition or idea that the state lends its countenance to the *188 liquor traffic by taxing it. This idea overlooks and disregards the principles that must always underlie taxation. Taxes are not favors; they are burdens, and are submitted to only because of their necessity. The right to impose them always rests upon some necessity of the government. The theory of government is that these burdens should be placed where they will do the least harm, and if they can be placed where they do not harm the public or the state but on the’contrary tend to aid the government and elevate society, they will be so placed. The fact that a government taxes a thing does not mean that the government sanctions it, or countenances it. For instance, the government sanctions charities, religious societies and institutions of this character, and because it sanctions them it exempts .them from all taxation so long as their means are used for the public good and not for private gain.
The theory of counsel for plaintiff seems to be that some special protection is given when a business is taxed, taxation and protection being reciprocal, but this proposition is not tenable. Those things which are favored by the government and protected are usually exempt from taxation, and in many instances are not only exempt from taxation but receive bounties, and whether a person in respect to his property, or his occupation, falls within the category of things taxable or not is immaterial as affecting his claim to protection from the government.
Taxes are laid frequently, as in the Dow assessment -tax, by way of discouragement or regulation; and, secondly, to partially compensate the public for the inconveniences resulting therefrom. There is nothing in the Constitution, common law, or decisions of the court that would inhibit or prevent the taxing of a forbidden business.
The taxing of the liquor traffic in the states of the Union where it is prohibited by the law of the state, and by the state Constitution, by the federal government, is a notable example, and has been upheld by the Supreme Court of the United States (License Tax case, 5th Wallace, page 462, U. S. Supreme Court Reports). On page 464 of the case the following language appears :
*189 “The general question in these cases was ‘can the defendants be legally convicted upon the several indictments found against them for not having complied with the acts of Congress by taking out and paying for the required license for carrying on the business in which they were engaged, such business being wholly prohibited by the laws of the several states in which it was carried on?’ ”
In this case Congress levied a tax upon a business that was prohibited by the laws of the state in which it was carried on. The court upon the question of conflict of these two laws says on page 473:
‘ ‘ There is nothing hostile or contradictory, therefore, in the acts of Congress to the legislation of the states. What the latter prohibits, the former, if the business is found existing, notwithstanding the prohibition, discourages by taxation. The two lines of legislation proceed in the same direction and tend to the same result. It would be a judicial anomaly, as singular as indefensible, if we should hold a violation of the laws of the state to be a justification for the violation of the laws of the Union. ”
It is further held that the license granted by the United States to carry on the business of the wholesale liquor dealer in the particular state named does not — although it has been granted in consideration of the fee paid — give the licensee power to carry on the business in violation of the state law forbidding such business to be carried on within its limits. McGuire v. Commonwealth, 3 Wall., p. 387.
So that from the highest court in the land we have the holding that there is nothing inconsistent with taxing a business which may be prohibited by law, though the taxing of it does not grant it any privileges or rights, that it gives it no standing, clothes it with no power, but merely taxes it as it finds it, and that the taxation of it tends to the same end as the prohibitory law, to-wit, the lessening of the evils resulting from its being carried on.
We think the correct doctrine is announced in Youngblood v. Sexton, 32 Michigan, 486 (20 American Reports, 654), by Cooley, J. (on page 668), in the following language:
“If one puts the government to a special inconvenience and cost by keeping up a prohibited business or maintaining a nui *190 sanee, this fact is a reason for discriminating taxation against him; and if the tax be imposed on the thing which is prohibited, or which constitutes the nuisance, the lax law, instead of being inconsistent with the law declaring the illegality, is in entire harmony with its general purpose, and may sometimes be even more effectual. Certainly whatever discriminations are made in taxation, ought to be in the direction of making the heaviest burdens fall upon those things which are obnoxious to the public interest wherever that is practicable.”
Suppose, for instance, in place of pleading in this case, as the plaintiff does, that he sold in violation of the Rose county local option law, that he set up the fact that he sold to minors only, and to persons who were habitual drunkards, could it be said that he had no right to make these sales, that they were prohibited by the state law everywhere in the state — and that without a vote by the people — and that by reason of that fact that the state did notuaean to tax it, that the state had no right .to tax it? If there be any common law, or other right to engage in the traffic of intoxicating liquors which the laws or Constitution of this state recognize, that right is certainly inhibited and effectually done away with so far as the sale to minors or persons who are habitual drunkards are concerned. A person who sold only to this class would not be heard to say that the imposing of the'Dow tax law was predicated upon his right to sell -and that this right being taken away the state was inhibited from collecting the tax. In other words, that his violation of one law was the bar or plea of abatement to the enforcement of another. In fact, there may be good grounds for the Legislature enacting both laws, as it has done, .to be 'operative at the same time in the same community. These laws are enforced by different officials. For instance, the Rose county local option law is enforeed by the courts, the sheriff, prosecutor, and city officials, mayors and police officers, while the Dow tax assessment law is enforced by the county auditor and treasurer, by the Auditor of State and a bureau under the office of the food and dairy commissioner. It might be that the officials whose duty it was to enforce one of these laws — of which but recently we have had such a vivid reminder in the removal by the Governor of the state of the mayor of Newark because of *191 bis lax enforcement of law — might be a sufficient reason for the enactment of a tax law applying, as the Dow assessment tax does, to all parts of the state. In fact, the Legislature has recognized that the liquor business is an outlaw, that it not only creates paupers and criminals but that through its anarchistic tendencies it paralyzes the officers of the law and renders those of its followers who engage in infractions of the law immune from the penalties prescribed by these same statutes. The Legislature has recognized this fact in the collection of the Dow tax, and provided at great expense to the state a bureau under the food and dairy commissioner’s office, authorized to employ secret service officers to go out in every county of the state and ferret out those engaged in the traffic who are evading the payment of these taxes.
And again, as to the enforcement of the county local option and other prohibitory laws, the state has especially authorized certain of its officers, whose duty it is to see that these laws are enforced, to appoint special secret service officers to ferret out and assist the officers provided by law in bringing the violators of these laws to justice.
In view of the history and experience of the officials of this state in dealing with the liquor problem, can any one say that the Legislature intended in the passing of the Rose county local option law, which permitted the voters of a county where the sentiment was strong enough to make the traffic in intoxicating liquors illegal and unlawful a bar to the collection of the Dow tax from those who, in spite of the law, because of lax officials, or otherwise, continue to engage in the business? If such be the ease, all that a county, where the sentiment was sufficiently strong in favor óf the liquor interest to prevent the enforcement of the Rose county local option law and to bring about the election of officials like the sheriff of Licking county, who resigned under investigation by the Governor of the state would have to do to prevent the collection of the Dow tax would be to call an election, cast their ballots in favor of prohibiting the traffic, let their officers — like that notable official did — go to sleep officially, open up their dram shops, and plead the adoption of the prohibitory act against the collection of the tax, and both the tax law and the county law prohibiting the sale would thereby be nullified. The *192 Legislature certainly did not intend such an anomaly, and if reports are true, there are counties in this state with just such conditions in them, and in the language of Judge Shauek (on page 54, Conwell v. Sears, 65 O. S.) way back in 1901 the Supreme Court of this state recognized the fact that for half a century prior thereto a statute had forbidden throughout the state the sale of intoxicating liquors to be drank upon the premises where sold. Yet, during this time, the forbidden traffic grew much beyond the general growth of the state.
Having this same idea in mind, recognized by the makers of our Constitution, and the Supreme Court of our state, the Legislature adopted both of these enactments so that the evils resulting from the traffic in intoxicating liquors in .the state might be more nearly eradicated in place of being increased and multiplied.
The same question has been up in the Supreme Court of Tennessee, and decided June 20, 1908, in Foster v. Speed, 120 Tenn., p. 470. The first syllabus of the case is:
“A business which is prohibited may be taxed.”
The second syllabus in this case:
“Acts 1903, page 599, e. 257, making the business of retailing liquors a privilege and imposing a tax thereon, does not allow sales where prohibited, and covers all sales whether legal or illegal, and one conducting a place for the sale of liquors by retail within four miles of a school house in violation of the four mile law, is liable for the tax; the two statutes tending to effect the prevention of the sale of liquor within prohibited territory.”
In this case, the plaintiff, T. J. Foster, conducted a place for the sale of liquors by retail in Shelby county outside the corporate limits of the city of Memphis, and within four miles of a school house where a school was kept. The defendant, Speed, was clerk of the county court of Shelby county, and issued a distress warrant against Foster for the privilege tax imposed by the general revenue laws of Tennessee upon those engaged in retailing liquors in places like Shelby county. Foster paid the tax to prevent a sale of his property, under the proceedings in that state, and brought this suit within thirty days, as was authorized by statute, to recover said tax back.
*193 Shields, J., in passing upon the ease uses the same language practically that Judge Shauck does in Conwell v. Sears, 65th State. He says, referring to the statutes imposing the tax:
“This in express terms imposes the tax upon all persons engaged in retailing liquors in this state. There is no exception of any person, place, or sale. It covers the whole state and all sales, whether legal or illegal. ’ ’
Shauck, J., in Conwell v. Sears, says:
“The provisions of the statutes for the assessment in question is found in Section 4364-9 of the Revised Statutes, and without exception or limitation 'it provides for the assessment upon the business of trafficking. The only limitation upon the terms of the statute is found in the eleventh subdivision of the same section which provides for a remission of a portion of the assessment when the person against whom it is made voluntarily discontinues the business, and in the twentieth subdivision it provides for such remission when there is a compulsory discontinuance of the business resulting from the exercise of the power of prohibiting the traffic which power is therein conferred.”
Shields, J., in Foster v. Speed bases his opinion upon the same legal propositions announced by Shauck, J., in Conwell v. Sears. He says:
“The policy of the General Assembly, for many years, has been to regulate, discourage, and limit the sale of intoxicating liquors'in this state: Unmistakable evidence of this is found in the numerous statutes prohibiting sales of liquor on Sunday and election day, and to minors and students, those gradually increasing the privilege tax upon such business, those prohibiting sales within certain distances of manufacturing plants, hospitals for the insane, and soldiers’ homes, etc., * * * by which the territory in which liquor can be sold in this state has been gradually narrowed and limited until 'it is now confined to certain cities in four out of ninety-six counties.
“We think in view of this settled policy of the Legislature, and the comprehensive language of the statute imposing the tax, that it is clear that it was intended that it should apply to all parts of the state. * * * The two statutes when applied to this territory, are consistent, and tend to effect the same purpose- — ■ the prevention of the sale of liquor therein, ’ ’
*194 This is practically the holding of our Supreme Court in every reported case.
Shauck, J., says in Conwell v. Sears:
“Although these municipalities have by ordinance forbidden the traffic, they have not prevented it. ’ ’
Shields, J., in Foster v. Speed, supra, further observes:
“The-imposition of the tax upon an outlawed business is often more efficient in suppressing it than statutes making it a criminal offense, because of the greater certainty of the collection of the tax and the difficulties attending to prosecution of the misdemeanor, and the fact that the enforcement of the two remedies is generally entrusted to different officers. ’ ’
lie quotes from Judge Cooley, in his work on Taxation (3 Ed., p. 242) :
“On the other hand, one purpose of taxation sometimes is to discourage the business, and perhaps put it out of existence.”
We think the reasons given by the learned judges in these cases, and the history of the liquor traffic in this state especially with regard to the legislative enactments and the judicial decisions of the courts of last resort rendered in reference thereto, imperatively tend to the reaching of but one conclusion in this case, and that is that the Legislature intended both of these laws as enactments tending to regulate the evils resulting from the traffic; that they were never intended by the Legislature to be inconsistent; that it gave the people of the county opportunity to prohibit, and that if the sentiment in that county was not strong enough to enforce the prohibitory law and to prevent the traffic that the Legislature, by the use of the broad and sweeping terms.of the Dow tax law, intended that the traffic, if carried on, .although in prohibitory territory, should be taxed.
It will be noticed that the Legislature has, from time to time, increased the amount of tax, the fact being made patent to them from sad experience that the former taxing laws and regulative provisions of our statutes have not been sufficient to curtail and eliminate the evils resulting from this traffic, but on the other hand, as observed by our court of last resort, notwithstanding *195 these regulative enactments, the evils resulting from the traffic has constantly increased. So that, in the language of Judge Minshall uttered in Adler v. Whitebeck, on pages 558 (1886), that the traffic and its abuses have grown to such proportion as to justly alarm all who reflect upon the interest of the state and society, as a part of his opinion in that famous decision, are even now more patent, and the abuses more impending than they were in the day that this learned jurist uttered these words.
The interest of society demands, the welfare of our state requires, the upholding of the dignity and majesty of our law, and the sustaining of the high position of the office of judge of our courts renders it imperative that the judges who interpret these laws shall not be less lenient in their interpretation than the legislators were in their enactment, and that the same considerations and conditions that rendered their enactment necessary should now be potent and efficacious to render their enforcement certain and effective.
Feeling these truths to be self-evident I feel constrained to hold, notwithstanding the high opinion I have for the learned jurist who rendered the opinion in Haas v. Remick, that the opinion rendered and the principles announced in that case are not the laws of the state of Ohio, but on the contrary, they are diametrically opposed to the whole tendency and tenor of the legislation of this state.
The court therefore holds that the Dow assessment tax may be charged against the business of trafficking in intoxicating liquors wherever carried on in this state of Ohio, whether the traffic be forbidden under county or other local option laws, and that the petition of the plaintiff in this case will be dismissed at his costs.
Judgment may be entered accordingly.